**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| DATACLOUD TECHNOLOGIES, LLC, <br><br> Plaintiff, <br><br> v. <br><br> MURATA MANUFACTURING CO., LTD MURATA CORPORATION, and MURATA ELECTRONICS NORTH AMERICA, INC., <br><br> Defendant. | Civil Action No. 2:25-cv-00684 <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff DataCloud Technologies, LLC (hereinafter, "Plaintiff" or "DataCloud") files this Complaint for patent infringement against Murata Manufacturing Co., Ltd., Murata Corporation, and Murata Electronics North America, Inc. (collectively, "Murata" or "Defendant") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1.    This is a patent infringement action to stop Defendant's infringement of the following United States Patents (collectively, the "Asserted Patents") issued by the United States Patent and Trademark Office ("USPTO"):

|  | U.S. Patent No. | Reference |
|---|---|---|
| 1. | 6,651,063 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/6651063<br><br>https://patents.google.com/patent/US6651063B1/en?oq=6%2c651%2c063 |
| 2. | 7,209,959 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7209959<br><br>https://patents.google.com/patent/US7209959B1/en?oq=7%2c209%2c959 |
| 3. | 7,398,298 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7398298<br><br>https://patents.google.com/patent/US7398298B2/en?oq=7398298 |
| 4. | 7,139,780 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7139780<br><br>https://patents.google.com/patent/US7139780B2/en?oq=7%2c139%2c780 |
| 5. | 7,246,351 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7246351<br><br>https://patents.google.com/patent/US7246351B2/en?oq=7%2c246%2c351 |
| 6. | 8,607,139 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/8607139<br><br>https://patents.google.com/patent/US8607139B2/en?oq=8%2c607%2c139 |

2.    Plaintiff seeks monetary damages.

## PARTIES

3.    DataCloud is a limited liability company organized and existing under the laws of

the State of Georgia and maintains its principal place of business at 44 Milton Avenue, Suite 254, Alpharetta, Georgia, 30009 (Fulton County).

4.      Based upon public information, Murata Manufacturing Co., Ltd. is a corporation organized under the laws of Japan with its principal place of business at 10-1, Higashikotari 1-chome, Nagaokakyo-shi, Kyoto 617-8555 Japan.

5.      Defendant Murata Corporation is a corporation duly organized and existing under the laws of Pennsylvania with places of business located at 3500 E. Plano Parkway, Plano, Texas, 75074, 2740 N. Dallas Parkway, Suite 100, Plano, Texas, 75093, 3033 W. President George Bush Hwy, Plano, Texas, 75075, and 1300 Coit Road, Plano, Texas, 75075.   Murata is registered to do business in Texas and does business in Texas, directly and through intermediaries, and offers its products and/or services, including those accused herein of infringement, to customers and potential customers located in Texas, including in the Eastern District of Texas. Murata may be served through its registered agent CT Corporation System, at 1999 Bryan St., Suite 900, Dallas, TX 75201.

6.      Defendant Murata Electronics North America, Inc. ("Murata NA"), is a Texas corporation with its principal place of business at 2200 Lake Park Drive, Smyrna, Georgia 30080 Upon information and belief, Murata NA may be served with process at CSC-Lawyers, Inc., 211 E. 7th Street Suite 620 Austin, TX 78701.

## JURISDICTION AND VENUE

7.      Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

8.      This action arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*, including 35 U.S.C. §§ 271, 281, 283, 284, and 285.  This Court has subject matter jurisdiction over this case for patent infringement under 28 U.S.C. §§ 1331 and 1338(a).

9.     Defendant is subject to this Court's specific and general personal jurisdiction under due process because of its substantial business in this Judicial District, in the State of Texas, and in the United States, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in this state, in this District, and in the United States.

10.    Specifically, Defendant intends to do and does business in, has committed acts of infringement in, and continues to commit acts of infringement in this District, in the State of Texas, and in the United States, directly, through intermediaries, by contributing to and through the inducement of third parties, and offers and sends its products and services, including those accused of infringement here, to customers and potential customers located in this state, including in this District, and in the United States.

11.    More specifically, Defendant directly and/or through its intermediaries, ships, distributes, makes, uses, imports, offers for sale, sells, and/or advertises its products and services in the United States, the State of Texas, and in this District.

12.    Based on the foregoing, Defendant has significant ties to, and presence in, the State of Texas and this District, making venue in this Judicial District both proper and convenient for this action.

13.    Therefore, venue is proper in this District pursuant to 28 U.S.C. §1400(b).

## **PREVIOUS NOTICE OF THE ASSERTED PATENTS**

14.    Defendant was previously notified of the applicability of DataCloud's patent portfolio to Defendant's products and services, and of Defendant's infringement of the Asserted Patents, by way of the letter(s) listed below:

- 3/8/23:  DataCloud Licensing Letter sent to Mr. Yoshitaka Tanino – VP, Legal &

IP Group (via email)

- 10/23/23: Follow up email sent to Mr. Tanino

- 11/8/23: Follow up email sent to Mr. Tanino

- 2/27/24: Follow up email sent to Mr. Tanino

### COUNT I: <u>INFRINGEMENT OF U.S. PATENT NO. 6,651,063</u>

15.    Plaintiff re-alleges and incorporates by reference each of paragraphs above as though fully set forth in their entirety.

16.    U.S. Patent No. 6,651,063 (the "'063 patent") was issued on November 18, 2003 after full and fair examination by the USPTO of Application No. 09/493,911 which was filed on January 28, 2000.  The '063 patent is titled "Data Organization And Management System And Method."  *See* '063 patent at p.1.  A Certificate of Correction was issued on February 3, 2004.

17.    DataCloud owns all substantial rights, interest, and title in and to the '063 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

18.    DataCloud or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '063 patent.

19.    The claims of the '063 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve networks and network systems by providing an organization scheme to streamline the process for storage and retrieval of information through a combination of automatic categorization and user influence.

20.    The written description of the '063 patent describes in technical detail each

limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

21.    Based upon public information, Plaintiff is informed and believes that Defendant has infringed one or more claims of the '063 patent, either literally or under the doctrine of equivalents, because it shipped, distributed, made, used, imported, offered for sale, sold, and/or advertised the products and services described below in a way that infringes.

22.    For instance, Defendant performs at least claim 4 of the '063 patent by performing A method for providing information to one or more users of a system comprising the steps of: storing information to be provided in an information pack; associating with said information pack at least a user destination address associated with one of a multiplicity of user data repositories each of said user data repositories associated with at least one of said users and a category identifier; associating with said information pack a provider identifier; communicating said information pack by means of a network to said user data repository associated with the user destination address; locating said information pack in a location of said user data repository associated with the user destination address reserved for information corresponding to a category to which said category identifier corresponds; and further comprising, after said step of communicating the information pack to said user data repository associated with the user destination address, the steps of: creating a custom location in said user data repository; placing said information pack in said custom location; associating a custom category identifier with said information pack; sending a custom category signal to a processing station uniquely associated with said user data repository including a data storage means and a data processing means, said

data storage means storing together said custom category identifier and said provider identifier, and said data processing means analyzing the provider identifier of subsequent of said information packs, comparing said provider identifier of said subsequent information packs with said provider identifier stored in said storage means and in the event of a match between the provider identifier of one of said subsequent information packs and the provider identifier stored in said storage means, placing said one of the subsequent information packs in said custom location.

23.    Murata Manufacturing SCA11H sensor node can be configured via HTTP API on an Android device. To upgrade the firmware on this sensor node using the configuration web page, open the page in a browser on your Android device and go to the "System Info" tab. Then, tap on the "Management" section to access the update options.

24.    Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

25.    Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT II: <u>INFRINGEMENT OF U.S. PATENT NO. 7,209,959</u>

26.    Plaintiff re-alleges and incorporates by reference each of paragraphs  above as though fully set forth in their entirety.

27.    U.S. Patent No. 7,209,959 (the "'959 patent") was issued on April 24, 2007 after full and fair examination by the USPTO of Application No. 09/542,858 which was filed on April 4, 2000.  *See* '959 patent at p. 1.  The '959 patent is titled "Apparatus, System, And Method For Communicating To A Network Through A Virtual Domain Providing Anonymity To A Client Communicating On The Network."

28.    DataCloud owns all substantial rights, interest, and title in and to the '959 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

29.    DataCloud or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '959 patent.

30.    The claims of the '959 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve networks and network systems by anonymizing network activity for individual clients and groups of clients for, among other reasons, security, traffic management, and routing purposes.

31.    The written description of the '959 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

32.    Based upon public information, Plaintiff is informed and believes that Defendant has infringed one or more claims of the '959 Patent, either literally or under the doctrine of equivalents, because it shipped, distributed, made, used, imported, offered for sale, sold, and/or advertised the products and services described below in a way that infringes.

33.    For instance, Defendant performs at least claim 1 of the '959 patent by performing a method comprising: in response to a request by a client to initiate communication with a destination website; setting up a forwarding session between the client and a destination server

corresponding to the destination website, the forwarding session employing a forwarder disposed between the client and the destination server to forward packets sent from the client to the destination server and to forward packets sent from the destination server to the client; employing the forwarder to transfer packets between the client and the destination server during the forwarding session, wherein the forwarding session is set up and implemented such that neither the client or the destination server is aware of the employment of the forwarder; employing a controller configured to communicate with the forwarder and a domain name server, wherein the controller queries the domain name server to resolve the name of the destination website associated with the destination server and initiates communication with the forwarder in response to an answer from the domain name server to resolve the name of the destination website associated with the destination server; employing a deceiver configured to communicate with the controller and the client, wherein the deceiver receives the request by the client to initiate communication with the destination website and initiates the controller to query the domain name server to resolve the name of the destination website associated with the destination server; and in response to the controller receiving the answer from the domain name server and initiating communication with the forwarder, initiating the forwarding session.

34.    Murata Manufacturing's website infrastructure (solution.murata.com) performed the recited method and step which shows the details for responding to website requests with Developer Tools enabled. The system depicts a high-level overview of the hosting of dynamic websites, such as used with Murata Manufacturing website infrastructure on information and belief. For a destination web server hosted, the web server appears to have a direct TCP connection between the local address (e.g. 192.168.29.38:56199) and the client address of 72.52.87.16:16750 (e.g. public IP).  Thus, neither the client or the destination server is aware of the employment of

the forwarder. Domains names hosted by Murata Manufacturing will be queried by the controller to resolve the name of the destination website associated with the destination server, such as "solution.murata.com". For example, in the complete list of 89 subdomain names for Murata Manufacturing, other names share the same IP address such as article.murata.com. The domain name server must be queried to find a corresponding private IP address of the destination website when subdomains share the public IP address. Murata Manufacturing's website infrastructure performed the recited step. The deceiver both (i) receives the request and (ii) later sends the data from the destination server in a manner that makes the deceiver appear to be the source of the data, when the source of the data is actually the destination server.

35.    Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

36.    Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT III: INFRINGEMENT OF U.S. PATENT NO. 7,398,298

37.    Plaintiff re-alleges and incorporates by reference each of paragraphs above as though fully set forth in their entirety.

38.    U.S. Patent No. 7,398,298 (the "'298 patent") was issued on July 8, 2008 after full and fair examination by the USPTO of Application No. 11/690,803 which was filed on March 23, 2007.  *See* '298 patent at p. 1.  The '298 patent is titled "Remote Access And Retrieval Of Electronic Files."

39.    DataCloud owns all substantial rights, interest, and title in and to the '298 Patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and

to collect damages for all relevant times.

40.     DataCloud or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '298 Patent.

41.     The claims of the '298 Patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve the retrieval and transmission of data from and/or to a remote server.

42.     The written description of the '298 Patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

43.     Based upon public information, Plaintiff is informed and believes that Defendant has infringed one or more claims of the '298 Patent, either literally or under the doctrine of equivalents, because it shipped, distributed, made, used, imported, offered for sale, sold, and/or advertised the products and services described below in a way that infringes.

44.     For instance, Defendant performs at least claim 13 of the '298 patent by performing a method for providing remote data directory structure management across at least one communications network comprising: receiving at least one request by a computing application operating on a computer server over the communications network for remote management control of data directory structures from participating users offered through a computing device coupled to the communications network; processing the request to provide the remote management control

over the data directory structures by providing data directory structure information if deemed accessible from data stored in a profile store relating to the data and data directory structures accessible to each of the participating users, the profile data store being queried for the data directory structures accessible to each of the participating users, wherein a single directory structure from among a plurality of the data directory structures associated with the profile data store is selected by each of the participating users for modification; delivering desired data and the remote management control over the desired data to identified delivery targets by the computing application over the communications network; generating at least one notification of the delivery of the desired data to the identified delivery targets upon the delivery of the desired data to the identified delivery targets; determining if user requested data is accessible based on the information in the profile data store; and delivering the user requested data and sending a confirmation of the delivery.

45.    Murata Manufacturing is an AWS Partner that accelerates IoT hardware development by providing pre-certified wireless connectivity modules. These modules have various form factors, a broad range of microcontrollers, and different wireless interfaces such as Wi-Fi, Bluetooth, cellular, and LoRa.

46.    Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

47.    Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 7,139,780

48.    Plaintiff re-alleges and incorporates by reference each of paragraphs above as

though fully set forth in their entirety.

49.    U.S. Patent No. 7,139,780 (the "'780 patent") was issued on November 21, 2006 after full and fair examination by the USPTO of Application No. 10/335,516 which was filed on December 30, 2002.  The '780 patent is entitled "System And Method For Synchronizing Files In Multiple Nodes."  *See* '780 patent at p. 1.

50.    DataCloud owns all substantial rights, interest, and title in and to the '780 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

51.    DataCloud or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '780 patent.

52.    The claims of the '780 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve how computerized communications systems synchronize files across multiple nodes.

53.    The written description of the '780 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

54.    Based upon public information, Plaintiff is informed and believes that Defendant has infringed one or more claims of the '780 patent, either literally or under the doctrine of equivalents, because it shipped, distributed, made, used, imported, offered for sale, sold, and/or

advertised the products and services described below in a way that infringes.

55.    For instance, Defendant performs at least claim 1 of the '780 patent by performing a method for synchronizing files between a central node and local nodes (*e.g.*, network-attached devices), each of which consists of a file server with a database and an application to allow for automatic updates, which method includes (a) storing one copy of each file that is shared between the local nodes (*e.g.,* network-attached devices); (b) creating a first table in each of the local databases to store information on copies of files in its respective local device; (c) creating a second table in the central database to record all update information on copies of files in all the devices; (d) updating a copy of a file in one of the devices (*e.g.,* the network-attached devices); (e) adding a new item of update information on the file in the second table (*e.g.,* updating the server database); (f) downloading the updated copy of the file from said one of the local file servers (*e.g.,* the images from one network-attached device), and uploading the updated copy of the file to the central file server as the latest edition of the file (*e.g.,* latest version of the files); (g) determining whether a required copy of the file in another of the local file servers needs to be updated (*e.g.*, by communicating with the server); and (h) downloading the latest edition of the file from the central file server to update said another of the local file servers if the required copy of the file needs to be updated (*e.g.,* updating another network-attached device).

56.    Murata Manufacturing SCA11H sensor node can be configured via HTTP API on an Android device. To upgrade the firmware on this sensor node, the user can download the firmware files from the downloads. Users can upgrade firmware from the System Info tab on the configuration web page. If the user wants to update the BCG algorithm firmware, then the user can upload the downloaded BCG firmware file.

57.    Defendant's aforesaid activities have been without authority and/or license from

Plaintiff.

58.     Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT V: <u>INFRINGEMENT OF U.S. PATENT NO. 7,246,351</u>

59.     Plaintiff re-alleges and incorporates by reference each of paragraphs above as though fully set forth in their entirety.

60.     U.S. Patent No. 7,246,351 (the "'351 patent") was issued on July 17, 2007 after full and fair examination by the USPTO of Application No. 10/081,921 which was filed on February 20, 2002.  The '351 patent is entitled "System And Method For Deploying And Implementing Software Applications Over A Distributed Network."  *See* '351 patent at p.1.  A Certificate of Correction was issued on November 20, 2007.

61.     DataCloud owns all substantial rights, interest, and title in and to the '351 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

62.     DataCloud or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '351 patent.

63.     The claims of the '351 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve the deployment and operation of software applications over TCP/IP networks.

64.     The written description of the '351 patent describes in technical detail each

limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

65.    Based upon public information, Plaintiff is informed and believes that Defendant has infringed one or more claims of the '351 patent, either literally or under the doctrine of equivalents, because it shipped, distributed, made, used, imported, offered for sale, sold, and/or advertised the products and services described below in a way that infringes.

66.    For instance, Defendant performs at least claim 14 of the '351 patent by performing a method for storing and running a software module on a user's client device that provides text files containing embedded program logic for the software module to assemble into a functioning application (*e.g.,* a website application) that provides a graphical user interface for receiving and interpreting user inputs to the client device that enables user interaction with the computer program running on the client device.

67.    Murata Manufacturing allows users to view video content on their mobile devices, which interact with the server. The video player is associated with the code to play the video content on the user's mobile device. The video player displayed on the mobile device includes options to receive user input and control the video playback using pause and play button. Murata Manufacturing enables viewing video content on user's mobile devices. A software module such as Murata Manufacturing website, runs on the mobile device and connects to the Murata Manufacturing server to fetch program logic and interface components as text-based files. These files include embedded code for assembling functional parts of the website such as the video player directly on the device. Once assembled, the video player provides a graphical user interface (GUI)

that allows the user to interact with the video content. This interface includes user input controls for the video content such as play, pause, and other playback options, which are interpreted and handled locally on the device.

68.    Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

69.    Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT VI: <u>INFRINGEMENT OF U.S. PATENT NO. 8,607,139</u>**

70.    Plaintiff re-alleges and incorporates by reference each of paragraphs above as though fully set forth in their entirety.

71.    U.S. Patent No. 8,607,139 (the "'139 patent") was issued on December 10, 2013 after full and fair examination by the USPTO of Application No. 10/834,595 which was filed on April 29, 2004.  The '139 patent is entitled "System and process for managing content organized in a tag-delimited template using metadata."  *See* '139 patent at p. 1.  A Certificate of Correction was issued on June 24, 2014.

72.    DataCloud owns all substantial rights, interest, and title in and to the '139 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

73.    DataCloud or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '139 patent.

74.    The claims of the '139 patent are not directed to an abstract idea and are not limited

to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve systems and processes for managing content organized in a tag-delimited template using metadata.

75.    The written description of the '139 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

76.    Based upon public information, Plaintiff is informed and believes that Defendant has infringed one or more claims of the '139 patent, either literally or under the doctrine of equivalents, because it shipped, distributed, made, used, imported, offered for sale, sold, and/or advertised the products and services described below in a way that infringes.

77.    For instance, Defendant performs at least claim 8 of the '139 patent by performing a method displaying a graphical interface based on a metadata template  that has an object that represents a structure and an appearance of a web page wherein the object is based on a class (*e.g.,* a template where you can add/edit) stored in a base template, and wherein the graphical interface comprises an input field corresponding to the object and defining an input property of a data entry field and generating a data entry form comprising the data entry field wherein the data entry field is configured to accept input corresponding to content of the object and a web page generator configured to generate the web page based on the metadata template wherein the web page comprises the content represented by the input.

78.    The Murata Manufacturing website infrastructure (www.murata.com/en-us/contactform) performed the recited method and step which shows the details for responding to

"Contact Form" object as an example. The "Contact Form" form is configured with input fields that accept inputs from the user. The structure and appearance of the web page were determined by the object of the website. Multiple data entry fields were included in the form, each configured to receive inputs as defined by the object in the template. These data entry fields were assigned classes that were stored in a base template to handle user input.

79.    Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

80.    Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## JURY DEMAND

81.     Plaintiff demands a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

82.     Plaintiff respectfully requests the following relief:

A.     An adjudication that one or more claims of the Asserted Patents has been infringed, either literally and/or under the doctrine of equivalents, by Defendant;

B.     An award of damages to be paid by Defendant adequate to compensate Plaintiff Defendant's past infringement, including interest, costs, and disbursements as justified under 35 U.S.C. § 284 and, if necessary to adequately compensate Plaintiff for Defendant's infringement, an accounting of all infringing sales including, but not limited to, those sales not presented at trial;

C.     Pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

D.     That this Court declare this to be an exceptional case and award Plaintiff its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and,

E.     Any further relief that this Court deems just and proper.

Dated: <u>July 3, 2024</u>

Respectfully submitted,

*/s/ James F. McDonough, III*

James F. McDonough, III (GA 117088)
Jonathan R. Miller (GA 507179)
**ROZIER HARDT MCDONOUGH PLLC**
659 Auburn Avenue NE, Unit 254
Atlanta, Georgia 30312
Telephone: (404) 564-1866, -1863
Email: jim@rhmtrial.com
Email: miller@rhmtrial.com

Jonathan L. Hardt (TX 24039906)*
**ROZIER HARDT MCDONOUGH PLLC**
712 W. 14th Street, Suite A
Austin, Texas 78701
Telephone: (210) 289-7541
Email: hardt@rhmtrial.com

C. Matthew Rozier (CO 46854)*
**ROZIER HARDT MCDONOUGH PLLC**
1001 Bannock Street, Suite 241
Denver, Colorado 80204
Telephone: (404) 779-5305; (202) 316-1591
Email: matt@rhmtrial.com

*Attorneys for Plaintiff DATACLOUD TECHNOLOGIES, LLC*

<u>Attachments</u>

- Civil Cover Sheet
- Proposed Summons: (1) Murata Manufacturing Co., Ltd.
- Proposed Summons: (2) Murata Corporation
- Proposed Summons: (3) Murata Electronics North America, Inc.